

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 1, 2022

**BY ECF & EMAIL**
Hon. Valerie E. Caproni
Thurgood Marshall
United States Courthouse
40 Foley Square, Courtroom 443
New York, NY 10007

    Re:    *United States v. Miles*, S3 21 Cr. 603 (VEC)

Dear Judge Caproni:

    The Government writes in response to the letter motions filed by defendant Darius Miles seeking an adjournment of the Court's trial schedule and to file confidential materials without redactions. (ECF Nos. 431, 432.) On the record before the Court, the Government objects to Miles's adjournment request. In addition, public filing of confidential materials should be denied.

    **A.  Miles's Motion to Reschedule Trial**

    Miles moves to reschedule the trial in this case based on supposedly viable pretrial motion practice, the volume of discovery, and scheduling conflicts. Miles's purported legal arguments are meritless and would not support dismissing the indictment or any delay in the litigation of this matter. Further, given the lengthy procedural record in this case and the lack of prior objection to the November 30, 2022 trial date, the Government objects to Miles's adjournment request.

    1.    <u>A Motion to Dismiss the Indictment is Meritless.</u>

    Miles contends that the November 30 trial should be adjourned because of the need for the Court to consider his motion to dismiss. Miles apparently intends to argue that the Indictment should be dismissed because Miles's fraud scheme did not "obtain the property of another," Miles Ltr., at 2, and that in submitting fraudulent reimbursement requests to the National Basketball Association Players' Health and Welfare Benefit Plan (the "Plan"), the defendants were committing fraud to obtain their own money. The Government need not respond in full to this argument now, given it likely will be the subject of motion practice before the Court. However, Miles's motion is baseless, and the Court's current schedule has budgeted sufficient time to consider it.

    Miles's claim that the Plan's money belonged to Miles is wrong. It is belied by Miles's own actions. If the Plan's money belonged to Miles, Miles would not have needed to create fraudulent invoices and engage in a widespread fraud scheme to obtain the Plan's money—he would have been able to merely ask for it. Nor is there any remotely legitimate reason Miles would

have paid approximately $61,000 in kickbacks to his co-defendant Terrence Williams, a week after Miles made his fraudulent submissions to the Plan.[1]  In fact, when making submissions to the Plan, Miles signed and certified that the information he submitted was "correct;" in fact, it was not. (*See* S3 Indictment ¶ 11.)  Further, he certified his understanding that "fraud is a felony . . . punishable by fines and/or imprisonment [and p]roviding misleading or false information constitutes fraud." (*Id.*)

The document submitted by Miles, as Exhibit B to his letter, supports the Government's view.  The Plan is a benefit provided to eligible current and former NBA players, who are permitted, consistent with the Plan's rules, to have eligible medical expenses reimbursed.  The Plan is not funded by Miles or other NBA Players, it is funded by NBA teams. (*See* Miles Ltr. Ex. B., at 11 ("The Collective Bargaining Agreement currently provides for Team contributions to the Plan on behalf of eligible Players. Team contributions to the Plan will be made in accordance with the provisions of the applicable Collective Bargaining Agreement (or any other agreements in effect between the NBA and the NBPA) and only to the extent required by the Collective Bargaining Agreement (or such other agreements).")  The money contributed to the Plan is held in a trust that is used to cover Plan expenses and claims for all Players and their eligible dependents. The Plan funds are collectively managed and invested.

There are not separate bank accounts for each eligible player.  Rather, an eligible player is entitled to a certain amount of reimbursement expenditures for each year of league service.  Once a player exits the league, they may be reimbursed, for eligible medical expenses, up to the amount of reimbursement they accrued per each year of NBA service.  The "balance sheet" Miles attached is the maximum amount of medical expenses an individual player can be reimbursed.  Further players' claims to Plan funds can be forfeit.  Whether because a player did not play for enough seasons for plan allotments to vest (*see id.* at 7-8) or through death (*see id.* at 10).[2]  Forfeit funds are used by the Plan to pay expenses, reserve against loss, and make payments to eligible claims. The Plan does not represent assets that are owned by individual players.[3]  Players (and their

---

[1] Miles obtained at least approximately $359,080 from the Plan for fraudulent claims.  To make those fraudulent claims, Miles obtained fake invoices from his co-defendant Williams.

[2] In the event of death, reimbursements may be collected by a deceased player's spouse and/or eligible dependents.  Eligible dependents include spouses and "qualifying children" (*i.e.* children who live with the eligible player and meet certain age requirements, among other criteria).  If those individuals do not exhaust the balance, or cease to qualify as an eligible dependent (*e.g.* by a children attaining a certain age) it is forfeit. (*Id.*)  Players cannot define other beneficiaries.

[3] In support of his argument, Miles points to one of the Plan's former attorney's opinion that the players were, in effect, stealing from themselves.  The Government disclosed that attorney's statements in abundance of caution.  The Government's disclosure obligations are not limited to material with which it agrees, and merely because the Government made a disclosure does not mean that the Government believes that attorney's opinion is "significant." (Miles Ltr., at 3). Indeed, and as was communicated to the defendants in March 2022, the Plan has informed the Government that the attorney's statements do *not* reflect the Plan's position.  The attorney who made those statements was not authorized by the Plan to make them, and that attorney is no longer

August 1, 2022
Page 3

eligible dependents) simply have a qualified right to access their vested portion of the Plan's funds under certain circumstances.

Even if there was some merit to Miles's legal argument—and there is not—the question of whether a victim's property is the object of the fraudulent scheme is a factual question that must be resolved after evidence is admitted at trial. Although inapposite for a number of reasons, in the case of *United States v. Barringer*, which Miles cites, the district court acquitted the trial defendant of her wire fraud conviction under Federal Rule of Criminal Procedure 29, finding that the Government offered insufficient evidence at trial that an identifiable victim was harmed by the defendant's fraudulent withdrawals from her 401(k) plan. *See* 481 F. Supp. 3d 596, 602-03 (W.D. Va. 2020). Indeed, a district court considering a similar factual scenario—a defendant who submitted fraudulent hardship withdrawal applications to obtain disbursements from his 401(k) account—denied a pretrial motion to dismiss the indictment, ruling that "[w]hether the Government's evidence will support the wire fraud charges is a question of fact for the jury." *United States v. Patel*, No. 1:21-cr-12 2022 WL 110842, at *2-3 (S.D. Ohio Jan. 12, 2022).

### 2. Miles's Additional Contemplated Motions Do Not Warrant an Adjournment.

The other legal issues Miles raises do not warrant an adjournment of trial. Particularly given the voluminous discovery material and detailed indictment in this case, a bill of particulars is unnecessary. *See, e.g.*, *United States v. Percoco*, No. 16-CR-776 (VEC), 2017 WL 6314146, at *21 (S.D.N.Y. Dec. 11, 2017) (quoting *United States v. Ojeda*, 412 F. App'x 410, 411 (2d Cir. 2011) ("A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.")). Similarly, Miles cannot "demonstrate a 'particularized need' that outweighs the presumption of [Grand Jury] secrecy.'" *E.g.*, *United States v. Silver*, 103 F. Supp. 3d 370, 381 (S.D.N.Y. 2015) (Caproni, J.) (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir.1978). Thus, production of Grand Jury transcripts is not warranted. Because neither of these motions is meritorious, and so will not require the production of additional materials, no delay in the trial schedule is needed.

### 3. The Procedural History of This Case Does Not Warrant an Adjournment.

The Court has long signaled its plan to reach an efficient and timely resolution of this matter. For several months now, it has been clear that a trial at around approximately December 2022 would be likely. Given the background described below, the Government does not believe it is appropriate to consent to an adjournment to the Court's considered scheduling.

---

representing the Plan. The Government also disclosed that the Plan (whose Board is equally divided among NBA League representatives and the NBA Players' Association representatives) took "no position" on its status as a victim. The Plan's choice of terminology, at that time, is irrelevant where, as described in the Indictment, the fact that Miles and his coconspirators stole millions from the Plan in a carefully orchestrated scheme is supported by overwhelming evidence.

August 1, 2022
Page 4

In separate proceedings in October 2021, the Court arraigned the defendants in this matter on the initial Indictment. During those proceedings, the Court expressed that it would require the Government to file bimonthly status reports regarding discovery and that the defendants would be permitted to respond to those updates, including informing the Court "if you have any particular problems or disagreements with what the government has reported." (10/28/21 Tr., at 7 (Miles Arraignment).) The Government filed discovery status reports on February 18, 2022, April 1, 2022, May 2, 2022, June 3, 2022, and July 3, 2022. (*See* ECF Nos. 201, 212, 243, 298, 391.) Miles did not file a response to any of these reports, nor did he complain about the pace of the production of discovery.

During the initial arraignments, the Court also set a conference for May 2, 2022 to determine next steps in this case. (*Id*.) On April 4, 2022, the Court rescheduled the May 2 conference for June, *see* ECF No. 214, and then, after the third superseding indictment was filed, the Court rescheduled that conference to July 7, 2022. (ECF No. 259.) The Court was clear in its written Order scheduling the July 7, 2022, conference that at that conference it "plans to try the Defendants in groups of four or five, with one trial scheduled for each month beginning in December 2022." (ECF No. 259, at 2.) Indeed, the Court informed Miles's counsel as much personally when the defendant was arraigned on the third superseding indictment. (*See* ECF No. 332, 5/9/22 Tr., at 6 (Miles, Brown, Bynum and Robinson S3 Arraignment) ("At that conference, I'm going to set the date for pretrial motions, as well as trial dates. . . . I anticipate setting the first trial in December, and then we'll go every month after that.").) At no time did Miles object to setting a December trial date, nor did Miles suggest to the Court that a December trial was too soon for trial in this case. Miles also did not communicate that members of his defense team had scheduling conflicts.

On June 3, 2022, pursuant to the Court's order, the Government submitted a letter to the Court with its proposed trial groupings. (ECF No. 299.) The Government listed Darrius Miles in the first trial group. The Court set June 10, 2022, as the date by which the Defendants' should file a joint response to the Government's proposed groupings, with proposed counter-groupings. (*Id*.) Miles did not file any response to his placement in this first trial group, which based on the Court's prior orders, the parties had notice was likely to be in December.

During the July 7, 2022 conference, when asked whether Miles objected to setting a motion and trial schedule, counsel did not object. (7/7/22 Tr. at 7 ("I am not suggesting that we don't think it's appropriate to set a motion schedule and trial date").) To be sure, Miles counsel did suggest, for the first time, that discovery has proceeded "more slowly than we had anticipated when this process started" and suggested certain briefing should occur on a separate track. (*Id*. at 7-8.) The Court declined to set a separate briefing schedule for Miles. When the Court announced that Miles's trial would start on November 30, 2022, Miles did not object, nor tell the Court about conflicts certain members of its firm has during that time. Approximately two weeks later, Miles filed the instant motion.

Miles's request would require rescheduling all of the trials in this matter, and while Miles counsel has obtained consent from the defendants in Trial Group I, counsel has not indicated whether counsel in Groups II through IV also consent. That underscores another issue inherent in

August 1, 2022
Page 5

Miles's motion. In a case, like this, with many defendants, it is difficult to design a trial schedule that pleases all defendants, and largely unavoidable that someone will be inconvenienced.[4]

Given the record in this case, including the Court's considered trial schedule in this multi-defendant case, and Miles's lack of prior objection to the Court's trial schedule, the Government did not believe it appropriate to consent to Miles's request. Nonetheless, the Government recognizes that the Court may determine that delaying the first trial in this matter by approximately 45 days, does not interfere with its overall docket, is appropriate in its discretion given the matter's complexity, and would allow more time to assess precisely how many defendants intend to exercise their right to trial.

### B. The Plan's Information and Communications with the Government Should Remain Confidential.

The Government opposes the unsealing of confidential materials. Although there is a presumption of access to judicial documents, such a presumption must be balanced against "countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

As an initial matter, it is not clear that the documents cited by Miles are "judicial documents." "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Lugosch*, 435 F.3d at 119. Miles submitted Plan documents, and statements from its former counsel, to "litigate his defense in public." (ECF No. 432.) These materials do not speak to the core question for the Court at this juncture: whether the trial schedule should be modified.[5] Even if the materials are considered a judicial document, the role of the material in addressing the question before the Court is low, thus the corresponding presumption of access is limited. *See Lugosch*, 435 F.3d at 119 ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts") (quotation and citation omitted).

No matter how classified, protecting the Plan's confidential materials and communications is legally permitted. The Plan has asked that the Government not publicly disclose its information, including the documents cited in Miles's letter. The Plan has informed the Government that

---

[4] While the Government is sensitive to unspecified scheduling conflicts of the "principal second attorney" to Miles and another attorney who works with Ms. Trzaskoma, Miles has retained a firm of approximately twenty attorneys, and the lead attorney he hired to represent him, Ms. Trzaskoma, has reported no conflicts. (Miles Ltr., at 4.) Other defendants in this matter are represented by solo-practitioners and may not be able to simply adjust to scheduling changes.

[5] The Government recognizes that in the event of a trial in this matter, documents like those appended to Miles motion, may need to be publicly available.

August 1, 2022
Page 6

disclosure of that information impacts its privacy, and the confidentiality of the relationship between its members and the Plan.[6]  Thus, the Plan's privacy interest is directly affected.  Further, the Plan has requested that the Government maintain confidentiality over communications its counsel have had with the Government.  That is particularly appropriate here because the statements Miles wants to file publicly, that of the Plan's former counsel, do *not* reflect the Plan's position.  Thus, making public statements not attributable to the Plan, and made by its former counsel, can serve only to injure the Plan's reputation.  *See United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995) ("Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.").  Given the defendants actions were aimed at the Plan, the Plan has the "right to be treated with fairness and with respect for [its] dignity and privacy."  18 U.S.C. § 3771(a)(8).

\* \* \*

The Government is available to address any questions the Court may have.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
Ryan B. Finkel
Daniel G. Nessim
Assistant United States Attorneys
(212) 637-6612/2486

---

[6] The Government's objection to Miles publicly filing material it received from the Plan and the Plan's third-party administrators is consistent with the Protective Order in this case.  The Protective Order, protects "material that affects the privacy and confidentiality of individuals or entities."  (ECF No., 165, ¶ 2.)